### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KEN PARSON,                                            CASE NO.: 1:12CV948

               Plaintiff,                                Judge Michael R. Barrett

GREG HOMER, et al.,

               Defendants.

### AMENDED CALENDAR ORDER

This matter is before the Court on Defendants' Motion for Partial Dismissal of Plaintiffs' Amended Complaint. (Doc. 9). Plaintiff has filed a memorandum in opposition (Doc. 14), and Defendants have filed a reply (Doc. 18). This matter is now ripe for review.

## I.    BACKGROUND

This case is about a Police Officer for the City of Monroe, Plaintiff Ken Parson ("Plaintiff"), who allegedly suffered from a speech impediment commonly known as stuttering. Plaintiff had been employed as a police officer with Monroe since March 14, 2001. When he first began working, his speech impediment was not that noticeable. In March 2007, Plaintiff was assigned to the detective section of Monroe. Several months later, in or about November 2007, his speech deteriorated substantially, and his stuttering became very noticeable.

Plaintiff claims that starting in late 2007 after his speech deteriorated, he began experiencing a wide array of different and harsh treatment from his supervisors and co-workers, including Greg Homer ("Homer"), Bill Brock ("Brock"), Brian Curlis ("Curlis"),

Frank Robinson ("Robinson"), Dave Chasteen ("Chasteen"), Doug Liest ("Liest"), and Alicia Beacock ("Beacock"), as well as other Jane or John Does. He also experienced allegedly wrongful discipline.

Although he had been performing well in the detective section of Monroe with his stuttering, he was transferred in or about June 2011 to road patrol where he was unable to perform effectively due to his stuttering. In 2012, he was placed on rotating patrol that required voice command presence with greater frequency. In July 2012, Plaintiff was placed on temporary disability.

Plaintiff also alleges he exercised his FMLA rights "at various times in 2008 and through 2011" for issues relating to his disability, and that he exercised his FMLA rights in 2010 following his father's death and in 2011 in regards to the birth of his daughter. In regards to those leaves, Plaintiff contends that he was treated unfairly, that employees interfered with his leave, and his absences were used against him for discipline.

On December 9, 2012, Plaintiff filed this lawsuit against Defendants Monroe, Homer, Brock, Curlis, Robinson, Chasteen, Liest, and Beacock, as well as other Jane or John Does. On February 25, 2013, Plaintiff filed the Amended Complaint. Plaintiff asserts six claims for relief.

His first claim for relief is for a hostile work environment and disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, et seq. against Defendant City of Monroe ("Monroe") and under Ohio Revised Code § 4112, et seq. against Defendants Monroe, Brock, Homer, Curliss, Chasteen, Liest and Beacock (Doc. 7, p. 11).

His second claim for relief is for disability discrimination, failure to accommodate and hostile work environment in violation of the ADA and Ohio Revised Code § 4112, et. seq., which he asserts against Monroe, Brock, Homer, Curliss, Chasteen, and Robinson. (Doc. 7, p. 15).

His third claim for relief is for violation of the Family Medical Leave Act ("FMLA") against Monroe, as well as Homer, Brock and Robinson in their individual capacities. (Doc. 7, p. 20).

His fourth claim for relief is for violations of and retaliation under 42 U.S.C. § 1983 against Monroe as well as Brock, Homer, Curliss, Chasteen, Liest, Beacock, and Robinson in their official and individual capacities. (Doc. 7, p. 22).

Plaintiff's fifth claim for relief is for retaliation in violation of the ADA, FMLA and Ohio Revised Code § 4112, et seq. (Doc. 7, p. 27). Plaintiff does not specify against which Defendants that claim is brought.

Plaintiff's sixth claim for intentional infliction of emotional distress. (Doc. 7, p. 29). Again, Plaintiff does not specify against which Defendants that claim is brought.

## II.   LEGAL STANDARD

Defendants move for dismissal for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief

that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556).

## III. <u>ANALYSIS</u>

In the motion for summary judgment, Defendants address Plaintiff's claims as follows. First, they address Counts One, Two and Five together because they all seek relief against Defendants for alleged disability discrimination and retaliation under the Americans with Disabilities Act and/or Ohio Revised Code § 4112, et. seq. Second, they address Count Three for alleged violations of the FMLA. Third, they address Count Four for alleged violations of 42 U.S.C. § 1983. Fourth, they address Count Five as it relates to retaliation under the FMLA, ADA and § 4112. Finally, they address Count Six for intentional infliction of emotional distress. Plaintiff's response also generally addresses his claims in this order.

### 1. Official Capacity Claims

Defendants argue that Plaintiff's official capacity claims against the Individual Defendants are redundant and should be dismissed. Plaintiff does not respond to that argument.

Official capacity claims are claims against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 144 (1985). Here, Plaintiff has named the City of Monroe as a Defendant as well as sued the various defendants who are city employees in their official capacities.[1] Given that the principal entity, the City of Monroe, is named as a Defendant in this action, the official capacity claims are redundant. *See Bauer v. City of Cincinnati,* No. 1:09-cv-46, 2011 U.S. Dist. LEXIS 122872, at *33 (S.D. Ohio Oct. 24, 2011) (dismissing official capacity claim against City of Cincinnati police chief where the plaintiff had also named the City of Cincinnati as a defendant); *see also A.M.S. v. Steele,* No. 1:11-cv-298, 2012 U.S. Dist. LEXIS 79896, at *25 (S.D. Ohio June 8, 2012) (Litkovitz, M.J.), *adopted by*, 2012 U.S. Dist. LEXIS 99556 (S.D. Ohio July 18, 2012) (Dlott, J.) (dismissing official capacity claim against city police chief where the plaintiff had also named the City of Cincinnati as a defendant for the § 1983 claim). Accordingly, the official capacity claims against Brock, Homer, Robinson, Curlis, Chasteen, Leist and Beacock are dismissed.

### 2. Counts One, Two and Five Regarding Claims Under the ADA and Ohio Rev. Code § 4112 for Disability Discrimination

#### A. ADA

Defendants seek dismissal of the ADA claims against all of the Defendants, except Monroe, on the basis that ADA claims cannot be maintained against supervisors in their individual capacities. Plaintiff disagrees with Defendants, arguing that although the Sixth Circuit agrees with Defendants' position, other circuits have permitted personal

---

[1] To the extent Plaintiff may complain that the official capacity suits against the police officers were suits against the City of Monroe Police Department separate and apart from the City of Monroe, the Court recognizes prior holdings that provide "[p]olice departments are not sui juris; they are merely sub-units of the municipalities they serve." *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002). Thus, they cannot sue or be sued, and the action may properly be maintained only against the City. *See id.*

liability against decision-making employees as "employers" under the ADA, Title VII and the Age Discrimination in Employment Act of 1967.  Plaintiff urges the Court not to follow the Sixth Circuit's guidance and to instead adopt the interpretations of other circuits.

The Sixth Circuit has held that "individuals who do not qualify as 'employers' under Title I of the ADA may not be held personally liable in ADA cases."  *Satterfield v. Tennessee*, 295 F.3d 611, 616 n. 4 (6th Cir. 2002) (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 807 n.1 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262, 120 S. Ct. 2718, 147 L. Ed. 2d 983 (2000)); *see also Wathen v. GE*, 115 F.3d 400, 404 (6th Cir. 1997) (citing caselaw from various circuits that found no individual liability of a supervisor or employee who does not otherwise qualify as an employer).  Thus, in the Sixth Circuit, in order to obtain the relief in damages Plaintiff seeks, he must show that the individual Defendants independently satisfy the statutory definition of employer.  *Satterfield*, 295 F.3d at 616, n.4.[2]  Plaintiff has not done so here.  There are no allegations that plausibly show the individual Defendants independently satisfy the definition of employer.  Rather, his allegations show that those individual Defendants were merely his co-workers and supervisors.

Although Plaintiff references three cases from the Northern District of Illinois where the district court found that supervisors could be personally liable for discrimination as agents of the employer, the Court finds those non-binding cases to be

---

[2] Under the ADA, employer is defined "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this title, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person."  42 U.S.C. § 12111.

unpersuasive.  All of those cases were decided in 1993.  *See Stzerlecki v. Schwarz Paper Co.*, 824 F. Supp. 821, 829 (N.D. Ill. 1993); *Vakharia v. Swedish Covenant Hosp.*, 824 F. Supp. 769, 784-86 (N.D. Ill. 1993); *EEOC v. AIC Security Investigations, Ltd.*, No. 92 C 7330, 1993 U.S. Dist. LEXIS 15025, at *29-30 (N.D. Ill. Oct. 21, 1993), *reversed and remanded*, 55 F.3d 1276 (7th Cir. 1995).  Subsequent to those decisions, the Seventh Circuit overruled the district courts' interpretation of the ADA, holding that "individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA."  *United States EEOC v. AIC Sec. Investigations*, 55, F.3d 1276, 1282 (7th Cir. 1995).  Likewise, other courts appeared to back away from permitting "individual capacity" suits against supervisors and co-workers and, instead, began dismissing those cases, relying on the ADA's "overall language and legislative history in finding that [the use of the term "agent"] was merely Congress' method for incorporating the doctrine of respondeat superior into the law."  *Rivera Rodriguez v. Police Dep't of Puerto Rico*, 968 F. Supp. 783, 785 (D.P.R. 1997) (acknowledging the broad interpretation of the term "employer", but nevertheless dismissing individual capacity claims against supervisors).  The Sixth Circuit's interpretation is in accord with that trend and remains binding precedent for this Court.  Therefore, Plaintiff's ADA claims in Counts One, Two and Five against Brock, Homer, Robinson, Curlis, Chasteen, Leist and Beacock in their individual capacities are hereby dismissed with prejudice.

## B.  Ohio Revised Code § 4112, et seq.

Defendants also seek to dismiss Plaintiff's state law disability discrimination claims against Leist and Beacock.  Defendants contend that Ohio law does not impose liability for discriminatory conduct on non-supervisors.

7

Under Ohio law, an individual supervisor or manager may be liable for employment discrimination.  Ohio Rev. Code § 4112; *Genaro v. Cent. Transport, Inc.*, 703 N.E.2d 782 (1999) ("a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112."); *Cheek v. Indus. Powder Coatings, Inc.*, 706 N.E.2d 323 (1999) (holding that "an individual employee, not otherwise deemed to be an 'employer' under the statute, may be individually liable for alleged violations of the employment discrimination provisions of the Ohio Civil Rights Act, Ohio Rev. Code §§ 4112.01(A)(2), 4112.02(A) & 4112.99").  However, "Ohio courts have refused to extend *Genaro* to non-supervisory employees."  *Minnich v. Cooper Farms, Inc.*, 39 F. App'x 289, 296 (6th Cir. 2002) (citing *Hale v. City of Dayton*, No. 18800, 2002 Ohio App. LEXIS 474, at *8 (Ohio App. Feb. 8, 2002); *Hoon v. Superior Tool Co.*, No. 79821, 2002 Ohio App. LEXIS 183, at *14 (Ohio App. Jan. 24, 2002)); *see also Edwards v. Ohio Inst. of Cardiac Care*, 868 N.E.2d 721, 734 (Ohio App. 2007) ("[A] co-worker who engages in discriminatory conduct would not fall within the definition of an employer and, consequently, may not be held individually liable for his conduct.").

Plaintiff does not argue that Leist or Beacock were supervisory employees, and indeed, the allegations in his Amended Complaint demonstrate that Leist and Beacock both were of junior rank to Plaintiff.   Although Plaintiff vaguely contends that those two Defendants had delegated or de facto authority, there is no indication that either Leist or Beacock had authority to fire, hire, supervise, evaluate or manage Plaintiff in any respect.   Consequently, even when accepting the facts alleged in the Amended

Complaint as true, Plaintiff has failed to state a claim against Leist and Beacock under Chapter 4112 that is plausible on its face.

Plaintiff's "cat's paw" argument does not preclude the dismissal of Leist and Beacock. "Cat's paw" liability attaches when a biased intermediate employee's actions are a "causal factor of the ultimate employment action" such that the animus of the intermediate employee can be attributed to the employer. *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1193 (2011) (applying the "cat's paw" theory in light of USERRA but noting the similarity to employment discrimination laws under Title VII); *see also Curry v. Goodwill Indus. of Ky., Inc.,* No. 1:11CV-00093, 2013 U.S. Dist. LEXIS 50228, at *19-21 (W.D. Ky. Apr. 8, 2013) (analyzing cat's paw theory in context of FMLA retaliation claim). In other words, this theory imposes liability on the *employer* for the discriminatory animus of the intermediate employee, but not on the intermediate employee himself. Thus, while the conduct of Leist and Beacock may be considered in determining Monroe's liability, they are not individually liable for any alleged discriminatory animus.

Accordingly, the disability discrimination claims under Ohio Revised Code § 4112 against Leist and Beacock are dismissed.

### 3. Counts Three and Five Regarding Claims for Violations of the FMLA

#### A. <u>Brock, Homer and Robinson</u>

Defendants contend that the FMLA claims against Brock, Homer and Robinson cannot be sustained because they are public agency employees. Defendants contend that it is well-settled in the Sixth Circuit that their status as public agency employees

9

precludes any personal liability under the FMLA.  (Doc. 9, p. 4) (citing *Mitchell v. Champman*, 324 F.3d 811, 825-26, 839 (6th Cir. 2003)).

In response, Plaintiff concedes that Defendants have accurately stated the law as interpreted by the Sixth Circuit and this Court.  Instead, he contends that other circuit courts and district courts have held that public employees may be held liable in their individual capacities.  (Doc. 14, p. 8).  Plaintiff thus seeks to have the Court reject the Sixth Circuit's holding in *Mitchell* in favor of the interpretation espoused by other circuit courts and district courts.

In their reply, Defendants contend that the Sixth Circuit's precedent in *Mitchell* controls and that Plaintiff can argue for a contrary interpretation on appeal. (Doc. 19, p. 2).

Having considered the arguments of the parties, the Court declines to reject the Sixth Circuit's holding in *Mitchell*, 324 F.3d at 825-26, 839, that public employees cannot be held individually liable under the FMLA.  Not only is this Court bound by the controlling circuit law, but Plaintiff has not demonstrated that it would be appropriate to stray from that precedent in this case.  Although since *Mitchell* other circuit courts and district courts have interpreted the FMLA to permit individual capacity lawsuits against public employees, the Sixth Circuit recently has acknowledged that split of authority but nevertheless continued to follow its holding in *Mitchell*.  *Diaz v. Michigan Dep't of Corrections*, 703 F.3d 956, 961-62 (6th Cir. 2013) (citing *Mitchell*, 343 F.3d at 825-26, 829) (stating that the appellants' attempt to "bring FMLA claims against state officials in their *individual* capacities" fails because "[t]his Circuit has held that public employees cannot be held individually liable under the FMLA.").  Accordingly, pursuant to *Mitchell*,

10

Brock, Homer and Robinson cannot be held liable in their individual capacities under the FMLA, and those FMLA claims against them must be dismissed.

### B. Monroe

Defendants contend that Plaintiff's FMLA claims are subject to a two-year statute of limitations as set forth in 29 U.S.C. § 2617.  Plaintiff does not address the applicable statute of limitations for his FMLA claims in his response.

Under 29 U.S.C. § 2617(1), "an action may be brought under [the FMLA] not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."  However, in the case of an action brought for a willful violation, "such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought."  29 U.S.C. § 2617(c)(2).  Defendants provide no explanation as to why the two-year, instead of the three-year, statute of limitations is applicable.  Given that Plaintiff has alleged that the violations were willful, the Court finds at this time that it is plausible that the three-year statute of limitations may be applicable.

Accordingly, at this time, claims arising from conduct for which the *last event* occurred prior to December 9, 2009 are time-barred.  Any claim based upon a *last event* constituting the alleged violation that occurred on or after December 9, 2009 are not time barred.  However, the Court was not asked to, and does not, decide which specific acts or events are or are not time barred.

### 4.  Count Four Regarding Claims for Violations of 42 U.S.C. § 1983

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must first establish two elements.  First, a plaintiff must allege that a defendant acted under color of state law.  *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citing *Fritz v.*

*Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law.  *Id.*  After that inquiry, the question is whether the defendants are responsible for that violation.  *Doe v. Clairborne Cnty.*, 103 F.3d 495, 505-06 (6th Cir. 1996).

Here, the parties dispute whether Plaintiff has sufficiently alleged that Defendants' conduct deprived him of rights secured under federal law, and whether the defendants are responsible for any alleged violation.  Given that the allegation as to a deprivation of a federally secured right is a threshold inquiry, the Court addresses it first.

### A. <u>Federal Right</u>

Defendants argue that Plaintiff's Section 1983 cause of action "consists only of 'threadbare recitals,' conclusory legal statements, sweeping generalizations, and non-specific assertions of wrongdoing without any identification of the source of his federal rights."  (Doc. 9, p. 8).  Defendants contend that those allegations are insufficient to satisfy *Iqbal and Twombly*.

Plaintiff responds that Defendants misstate the pleading standard, and that the correct pleading standard is set forth in *Handy-Clay*, 695 F.3d at 538-39, 548.  Plaintiff responds that under that standard, he need not allege all of the relevant facts but must simply provide Defendants with fair notice of the claim and the general grounds upon which it rests.  In his response, Plaintiff also indicates that he is proceeding on an Equal Protection claim based upon a "class-of-one" theory.

In their reply, Defendants contend that the only federal right identified by Plaintiff is an Equal Protection "class-of-one" theory, which must be dismissed because such a claim is not available to public employees like Plaintiff.  Defendants also reiterate that

12

Plaintiff has not stated any plausible constitutional right or unfair process rising to the level of plausibility.

As an initial matter, the Court recognizes that the pleading standard set forth in *Handy-Clay* is the same as the Court has outlined above in Section II. The *Handy-Clay* court simply noted that a district court should not credit the defendants', rather than the plaintiff's, version of facts on a motion to dismiss because it impermissibly heightens the plaintiff's pleading requirement at that stage of the litigation. *Handy-Clay*, 695 F.3d at 548. Nevertheless, the *Handy-Clay* Court still required that the plaintiff "'state a claim to relief that is plausible on its face'" and that, if accepted as true, are sufficient to "'raise a right to relief above the speculative level.'" *Id.* at 538 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). It further noted that the complaint must thus "'contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Id.* (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)).

With those standards in mind, the Court turns to whether Plaintiff has sufficiently alleged a federally secured right of which he was deprived by Defendants. The Court starts with Plaintiff's alleged deprivation of a federally guaranteed right to Equal Protection. Plaintiff attempts to proceed on his Equal Protection claim on a "class-of-one" theory. However, equal protection for a class of one is unavailable for public employees. *Enquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 598, 128 S. Ct. 2146; 170 L. Ed. 2d 975 (2008); *see also Heike v. Guerva*, No. 10-1728, 2013 U.S. App. LEXIS 5420, at *26-27 (6th Cir. Mar. 18, 2013). As such, the Court agrees with

Defendants that Plaintiff's Section 1983 based on the deprivation of a right to Equal Protection must fail.

In the Complaint, Plaintiff also plainly alleges a violation of his Fourteenth Amendment rights to procedural and substantive due process, although he fails to specifically refer to that right as a basis for his claim in his response to Defendants' motion. (*See* Doc. 7, ¶¶ 176, 200-07). The Court gives Plaintiff the benefit of the doubt and assumes he has not abandoned that theory.[3] Defendants have not specifically moved for dismissal as to that violation, and instead have sought generally a dismissal on the basis that his other allegations are conclusory, sweeping generalizations, and threadbare recitals. Although the Court agrees that the Section 1983 claim contains disjointed allegations, the Court finds that Plaintiff has put Defendants on fair notice of a claim based on violation of procedural and substantive due process rights. He also provides factual support for those allegations. While it is possible that the factual allegations do not state a plausible claim under Section 1983, it is not the Court's responsibility to specifically identify and analyze any deficiencies when the Defendants have not done so despite plain assertions by Plaintiff as to alleged violations of his due process rights.

As to his procedural due process claim specifically, Plaintiff alleges in regards to his Section 1983 claim that he had property interests in his employment as a detective and in specific personal property that he was deprived of without an opportunity to be heard. (Doc. 7, ¶¶ 176, 200, 202, 203, 207). He also provides examples of instances in which he was not given the opportunity to be heard. (Doc. 7, ¶¶ 200-202). Given that

---

[3] If Plaintiff intends to abandon the theory, then he should follow the appropriate procedures to dismiss his Section 1983 claim.

Defendants do not attempt to explain to the Court what the precise deficiencies in those allegations may be that warrant dismissal, the Court does not opine on whether those allegations are plausible under the law.

Likewise, as to the substantive due process claims, the Court finds that Plaintiff made more than conclusory or threadbare allegations as to the deprivation of substantive due process rights to personal safety in the workplace, to the protections of the First Amendment protections, and to the protections of the Fourth Amendment. (*See* Doc. 7, ¶¶ 201, 204-05). Again, the Court does not opine on whether those claims are indeed plausible under the law, as Defendants have moved to dismiss based only on the fact that the allegations are threadbare and legal conclusions, without identifying any specific allegation that they believe is insufficient or identifying any specific deficiencies in the pleadings that make his claim not plausible. As such, the Court proceeds with its analysis as to the procedural and substantive due process rights of Plaintiff.

However, to the extent that Plaintiff intends to assert any other federally secured right of which he was deprived, the Court finds that Plaintiff has not sufficiently identified that right to provide Defendants with fair notice or set forth sufficient allegations to make plausible a claim that is based upon that right. As such, claims based on any federally secured other than those identified above are hereby dismissed.

The Court now turns to Plaintiff's specific allegations against the various Defendants to determine whether he has sufficiently alleged responsibility on the part of those Defendants.

### B.  Monroe

Defendants argue that Plaintiff has failed to state a plausible claim against Monroe because he has not demonstrated a policy or custom of Monroe that caused the alleged constitutional violation.

Plaintiff responds that Monroe can be liable based upon the actions of those to whom policymaking authority has been delegated, including the Chief of Police and the City Manager.  Plaintiff argues that Brock and Homer had unfettered discretion to hire and fire and to set the terms and conditions of his employment such that a de facto policy arises when faced with alleged constitutional violations.  Plaintiff further argues that Monroe can be liable based on the inaction of City Council, which had notice of the conduct and actions but did nothing.

In the reply, Defendants do not respond to those arguments made by Plaintiff.

Governmental entities cannot be held liable for an injury inflicted solely by its employees or agents unless there is a direct causal link between the governmental entity's policy or custom and the alleged constitutional tort.  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Monnell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005).  In other words, the plaintiff must "show[] that the unconstitutional policy or custom existed, that the policy or custom was connected to the [government entity], and that the policy or custom caused his constitutional violation.  *Napier*, 238 F.3d 737, 743 (6th Cir. 2001).

To hold a municipality liable on a theory of inaction, a plaintiff must specifically establish:  (1) the existence of a clear and persistent pattern of those particular violations by the municipality's employees; (2) notice or constructive notice on the part of the municipality; (3) the municipality's tacit approval of the unconstitutional conduct,

16

such that its deliberate indifference in its failure to act can be said to amount to an official policy; and (4) that the municipality was the "moving force" or direct causal link in the constitutional deprivation. *McCoy v. Bd. of Educ.*, 515 F. App's 387, 393 (6th Cir. 2013); *see also Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2008).

Here, to the extent that Plaintiff seeks to proceed against Monroe based on any written policies, well-established customs, or the City Council's general inaction, his claim fails. Plaintiff has not made any allegations relating to an official policy of an entity or department of Monroe nor has he alleged any facts from which the Court can infer a well-established custom of any entity or department of Monroe relating to the alleged constitutional deprivations. As to the City Council's alleged inaction specifically, Plaintiff has not alleged facts that show the existence of a clear and persistent pattern of tolerance or acquiescence by City Council of the violation of federal constitutional rights, as is required to hold Monroe liable for that inaction. Thus, Plaintiff's claims in those regards cannot survive.

However, Plaintiff has alleged and argued sufficient facts to survive a motion to dismiss on the single act or decision of an official policymaker. He has explained the policymaking status of Brock and Homer, which Defendants' have not contested in their reply. He further has alleged and argued that they have final policymaking authority in regards to personnel decisions, and in regards to setting the terms and conditions of employment, and that they exercised their authority in that regard by taking specific actions against Plaintiff, including transferring him to road patrol despite medical records indicating he should not be transferred, making personnel decisions contrary to his

interests without providing an opportunity to be heard, engaging in allegedly retaliatory acts, and deciding not to provide him with sufficient support and backup while on road patrol, as well as other acts. Defendants have provided no rebuttal argument that such allegations still are insufficient to hold Monroe liable. Thus, for the purposes of this Opinion, the Court finds the allegations are sufficient.

As such, the Section 1983 claim, as limited to the federally guaranteed rights of procedural and substantive due process, remains pending against Monroe based on the theory of a single act or decision of an official policymaker.

### C. **Brock, Homer, Robinson, Curliss and Chasteen**

Defendants argue that the claims against Brock, Homer, Robinson, Curlis, and Chasteen must be dismissed because supervisory personnel cannot be liable under Section 1983 based on allegations of only respondeat superior. Specifically, Defendants argue that Plaintiff must, but has not, shown that the supervisor encouraged a specific incident of misconduct or somehow directly participated it. Further, Defendants contend that those Defendants cannot be liable for negligent or reckless supervision.

Plaintiff responds that his allegations are not based upon respondeat superior liability but on knowledge, participation, acceptance and toleration of physical or mental abuse of Plaintiff by each of those five Defendants.

Defendants do not directly reply to Plaintiff's argument.

Having reviewed the parties' arguments and the relevant caselaw, the Court finds that Plaintiff has alleged sufficient facts at this stage of the litigation to survive summary judgment on the Section 1983 claim against these Defendants based upon procedural

and substantive due process claims. The doctrine of respondeat superior does not apply in Section 1983 lawsuits to impute liability onto supervisory personnel; rather, to find supervisory personnel liable, a plaintiff must allege that the supervisors condoned, encouraged, implicitly authorized, approved, or knowingly acquiesced in the alleged misconduct. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005). Neither the acts of one's subordinates nor a mere failure of the supervisor to act are sufficient to impose supervisory liability. *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724, 147 L. Ed. 2d 988 (2000); *McIntosh v. Butler Cnty. Children's Servs. Bd.*, No. 1:09cv274, 2010 U.S. Dist. LEXIS 78115, at *11-12 (S.D. Ohio Mar. 24, 2010).

Plaintiff has alleged sufficient facts to make it plausible that each of the Defendants knew of the actions being taken against him, implicitly or knowingly encouraged the incidents, and/or directly participated in the allegedly unconstitutional conduct that deprived him of his federally guaranteed rights to procedural and substantive due process. (*See, e.g.*, Doc. 7, ¶¶, 79-80, 81, 85, 112, 120, 192-93, 194, 200-05, 218). Accordingly, the claims against those Defendants will not be dismissed at this stage of the litigation.

### D. **Leist and Beacock**

Defendants argue that there are no specific allegations against Leist and Beacock that plausibly shows either acted in a manner to deprive Plaintiff of a federally guaranteed right. Plaintiff provides no response to this argument.

Having considered Defendants' arguments and having reviewed the allegations in the Complaint, the Court finds that Plaintiff has failed to state a plausible Section

1983 claim against Leist or Beacock in their individual capacities.  Plaintiff identifies no conduct by Leist in his Section 1983 claim that he alleges violated his constitutional rights to procedural or substantive due process.  Nor does the sole allegation that Beacock threw a pen at Plaintiff rise to the level of a plausible claim for deprivation of his right to procedural or due process.  Accordingly, the Section 1983 against Leist and Beacock are dismissed.

### E.  Statute of Limitations

Defendants argue that the applicable statute of limitations for claims under 42 U.S.C. § 1983 is two years such that any claims for conduct of Defendants that occurred prior to December 9, 2010 are time-barred.

Plaintiff responds that the argument is premature because in regards to hostile work environment claims, if one act that contributes to the hostile work environment claim arose within the limitations period then the entire duration can be considered, particularly when the conduct did not cease during the entire period.

In their reply, Defendants argue that the request is not premature, and defining the period of time for which discovery is permitted is essential to the management of the case.

The Court finds that Plaintiff's Section 1983 claims are governed by a two-year statute of limitations.  *See Nadra v. Mbah*, 839 N.E. 2d 829 (2008) (applying Ohio's two-year statute of limitations set forth in Ohio Revised Code § 2305.10 to Section 1983 claims); *see also Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (state law provides the statute of limitations, but federal law governs when the limitations period begins to run).  The statute of limitations commences to run when the plaintiff knows or has

reason to know of the injury which is the basis of his action.  *Sever*, 742 F.2d at 273; *see also Scott v. Ambani*, 577 F.3d 642, 646 (2009).  Accordingly, the Court finds Plaintiff's claims prior to December 9, 2010 of which he had reason to know and could have discovered through the exercise of due diligence are time-barred.  The Court, however, does not opine on which specific acts are subject to the statute of limitations.

### 5.  Counts Four and Five Regarding Retaliation

Defendants argue that the retaliation claims are a hodgepodge of claims brought under the ADA, FMLA, Section 1983 and Ohio Revised Code 4112.  They contend that for the same reasons set forth as the ADA and FMLA claims, the claim is barred against individual employees.  As to the claim based on Section 1983, Defendants argue that they are subject to the same deficiencies noted above.   Plaintiff provides no response.

Although the Court believes those retaliation claims were encompassed within its analysis above, it reiterates those findings here given that the retaliation claims were separately addressed by Defendants.  As such, the retaliation claims based on the ADA, FMLA and Chapter 4112 are dismissed against the individual Defendants in their individual capacities.  The retaliation claims brought under Section 1983 as they relate to the matters dismissed above also are dismissed.  However, the same issues that remain pending as the Section 1983 claim above also remain pending as to the retaliation claim brought under Section 1983.

### 6.  Count Six Regarding Claim for Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires plaintiff to show that (1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was

extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious. *Hanly v. Riverside Methodist Hosp.*, 603 N.E.2d 1126 (Ohio 1991). *See also Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 453 N.E.2d 666, 671 (Ohio 1983). Extreme and outrageous conduct occurs "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Yeager*, 453 NE. 2d at 671.

Here, Plaintiff has not specifically identified the Defendants against which he seeks to assert this claim, and the Court assumes he intends to assert it against all of the Defendants. In moving for dismissal, Defendants do not explain why the allegations are insufficient as to any one Defendant, and instead, generally argue that Plaintiff's allegations do not show such extreme and outrageous conduct to make any Defendant liable. However, the Court finds otherwise.

Here, Plaintiff's allegations are sufficient at this stage of the litigation to state a plausible claim for intentional infliction of emotional distress. As alleged by Plaintiff, the conduct of Defendants goes beyond mere trivialities, negligence, and hurt feelings. Instead, Plaintiff has alleged that Defendants knew of his speech impediment and its severity, his limitations because of the speech impediment, and his concerns relating to that speech impediment in certain situations, yet they knowingly and intentionally placed him in dangerous situations without the proper support, ridiculed him and intentionally

exposed his handicap in front of others, and otherwise engaged in conduct that could rise to the level of heartless, flagrant and outrageous.  Plaintiff's stuttering became worse and he was eventually placed on temporary disability by his doctors.  While in all cases it is possible that those allegations may prove to be untrue, at this stage of the litigation they are sufficient to survive scrutiny.  As such, the intentional infliction of intentional distress claim will not be dismissed.

### 7.  Invasion of Privacy

Although Plaintiff argues that his claim for invasion of privacy should not be dismissed, Plaintiff has not included any such claim in his Amended Complaint.  As such, that cause of action is not before the Court and it warrants no further discussion.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**.  It is ORDERED that

1. The following claims are DISMISSED:

    a. All of the ADA claims against all Defendants, except Monroe.

    b. All FMLA claims against all Defendants, except Monroe.

    c. All claims under Ohio Revised Code § 4112, et seq. against Leist and Beacock.

    d. Plaintiff's Section 1983 claim against all Defendants based upon the Equal Protection Clause.

    e. Plaintiff's Section 1983 claim based on procedural and substantive due process against Leist and Beacock.

    f. Plaintiff's Section 1983 claim based upon procedural and substantive due process against Monroe to the extent that claim concerns an official policy or well-established custom, or the inaction of City Council.

g. All official capacity claims against Monroe, Brock, Homer, Robinson, Curlis, Chasteen, Leist and Beacock.

h. All invasion of privacy claims against all Defendants, as they have not been raised in the Amended Complaint.

2. The case will proceed on the following claims:

a. The ADA claims against Monroe.

b. The FMLA claims against Monroe.

c. The claims under Ohio Revised Code § 4112, et seq. against Monroe, Brock, Homer, Robinson, Curlis and Chasteen.

d. The Section 1983 claims based on procedural and substantive due process, as set forth above, against Monroe, to the extent that claim concerns an act or decision of a policymaker.

e. The Section 1983 claims based on procedural and substantive due process, as set forth above, against Brock, Homer, Robinson, Curlis and Chasteen.

f. The intentional infliction of emotional distress claim against all Defendants.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court

24